# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **KIRK A. DEROUEN** | * | **CIVIL ACTION NO. 11-0830** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Kirk A. DeRouen, born February 4, 1963, filed applications for a period of disability and disability insurance benefits, and supplemental security income on January 13, 2009, alleging disability as of December 31, 2005, due to hip problems.[1] On March 24, 2010, the Administrative Law Judge ("ALJ") issued a partially favorable decision, finding that claimant was disabled beginning July 6, 2009, but not before. After the Appeals Council denied claimant's request for review, claimant filed for judicial review with this Court.

---

[1] Claimant remained insured through June 30, 2008. (Tr. 12). Thus, claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

<u>FINDINGS AND CONCLUSIONS</u>

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability prior to July 6, 2009.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from University Medical Center ("UMC") dated June 29, 2005**.  Claimant complained of problems with the top of his right leg of the hip. (Tr. 178).  X-rays showed osteoarthritis of the right hip joint with avascular necrosis of the femoral head.  (Tr. 181).   The assessment was right hip pain status-post MVA three months prior.  (Tr. 179).

**(2) Records from Leonard J. Chabert Medical Center dated January 17, 2006 to March 6, 2006**.  On January 17, 2006, claimant complained of right-sided hip pain for one year.  (Tr. 185).  He reported that the pain had become progressively worse on March 6, 2006.  (Tr. 184).  X-rays of the right hip showed significant osteoarthritic changes in the right hip with joint space narrowing,

2

subcondral sclerosis, and marginal spur formations.  (Tr. 183).  Mild osteoarthritic changes in the left hip were also noted.

**(3) Report from Dr. Stephen Boudreaux dated July 24, 2008**.  Claimant complained of left ankle pain.  (Tr. 190).  He had had right hip pain for four years, for which he needed a replacement.

**(4) Records from Dr. Donald Pavy dated February 20, 1997 to October 28, 2008**.  On October 28, 2008, claimant was seen for left knee pain.  (Tr. 192). X-rays revealed no fracture or dislocation and a possible small suprapatellar effusion.

**(5) Consultative Examination by Dr. Trevor Richard dated May 14, 2009**.  Claimant complained of right hip pain which began five years prior.  (Tr. 203).   He stated that he was able to walk 600 yards, stand with constant pain, and sit indefinitely.  He also complained of swelling in the front of his right hip.  He had last worked as a welder the previous year, and currently did only odd jobs occasionally.  He was independent with activities of daily living and able to perform yard work.

On examination, claimant's blood pressure was 148/78.  (Tr. 204).  He was 6 feet tall and weighed 205 pounds.  He had a limping gait favoring the right side

and was unable to stand on his tiptoes.  Right hip x-rays showed normal joint space with no fractures.  (Tr. 205).

Dr. Richard's impression was arthralgia.  He believed that claimant could sit, walk, and/or stand for a full workday; lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions.  He opined that claimant's subjective complaints outweighed the objective findings.  He found no evidence of right hip swelling or inguinal hernia.

**(6) Physical Residual Functional Capacity Assessment dated April 7, 2009**.  Claimant was able to occasionally lift 20 pounds and frequently carry 10.  (Tr. 208).  He could stand/walk and sit about six hours in an eight-hour workday.  He had unlimited push/pull ability.  He could occasionally climb, kneel, crouch, and crawl, and frequently balance and stoop.  (Tr. 209).  He was limited as to reaching all directions.  (Tr. 210).

**(7) Records from Leonard Chaubert Medical Center dated May 30, 2009 to August 20, 2009**.  On May 30, 2009, claimant complained of chronic right hip pain and left knee and foot pain.  (Tr. 226-29).  His diagnosis was acute gout in the left knee and foot and right hip pain.  (Tr. 229).

On August 4, 2009, claimant was admitted for a right hip total joint replacement.  (Tr. 251-52).

**(8) Affidavit of Dr. H. Nawas dated December 21, 2009**.  Dr. Nawas, claimant's treating orthopedic surgeon, stated that claimant had "been unable to engage in any substantial or gainful employment since December 31, 2005 as a result of the disability associated with the developing hip condition which ultimately will result in a double hip replacement."  (Tr. 296).

**(9) Affidavit of Dr. Stephen Boudreaux dated January 28, 2009**.  Dr. Boudreaux, claimant's treating family physician, stated that claimant had "been unable to engage in any substantial or gainful employment since December 31, 2005 as a result of the disability associated with the developing hip condition which ultimately will result in a double hip replacement."  (Tr. 299).

**(10) Claimant's Administrative Hearing Testimony**.  At the hearing on January 28, 2010, claimant was 47 years old.  (Tr. 33).  He testified that he was 6 feet tall and weighed 207 pounds.  He said that his girlfriend was staying with him and taking care of him by cooking and putting his socks on for him.

Claimant had completed the eighth grade.  (Tr. 34).  He stated that he was certified in welding.  He had worked on drilling production platforms.  He said

that he had tried to do welding and fitting again after December, 2005, but could not do it.  (Tr. 35).

Regarding restrictions, claimant testified that he could sit down for half an hour to 40 minutes, then had to walk around and loosen up a little bit.  (Tr. 36).  He stated that he could stand for 30 and walk around for 40 minutes, then had to get in a tub of hot water to relax.  He said that he could walk up stairs if he was holding onto a rail.  (Tr. 37).  Additionally, he estimated that he could walk about half a mile.  (Tr. 40).

As to complaints, claimant testified that he had deteriorating joints in his hip and had problems with his left upper extremity.  (Tr. 36-37, 42-43).  Additionally, he complained of gout in his feet, for which he took cortisone shots.  (Tr. 38).  He also had neck pain.  (Tr. 41).

Regarding activities, claimant testified that he drove a car.  (Tr. 36).  He stated that he visited his family and played cards with friends occasionally.  (Tr. 39-40).  He said that he had tried to deer hunt the week before, but got tired and had to go home and get in a tub of hot water.  (Tr. 39).  He reported that he had taken Lortab for pain, but it had made him dizzy so he had stopped taking it.

**(11) Administrative Hearing Testimony of Thomas M. Lafosse, Vocational Expert ("VE")**.  Mr. Lafosse described claimant's past work as a

6

welder fitter as medium and skilled.  (Tr. 47).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience; who could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit for six hours, and could not do over-shoulder work with the left arm.  In response, Mr. Lafosse testified that he could work as a tool and dye maker, of which there were about 10,000 positions; tool grinder filer or sharpener, of which there were about 6,000 positions, and metal and plastic workers, of which there were about 32,000 jobs.  (Tr. 48).

When the ALJ changed the hypothetical to reduce claimant's capacity to sedentary work, where he could lift and carry 10 pounds occasionally and five pounds frequently, stand and walk for only about two hours, and sit for six hours with no over-shoulder work, Mr. Lafosse identified the jobs of metal and plastic worker, of which there were about 1,600 sedentary semi-skilled and 3,200 unskilled jobs; product inspector or tester, of which there were about 40,000 semi-skilled and 14,000 unskilled sedentary jobs, and machine tender job, packaging and filling machine operator, of which there were 5,000 sedentary unskilled jobs. The ALJ then changed the hypothetical to include gout attacks which occurred three or four days a month.  (Tr. 49).  In response, the VE testified that such claimant might have a difficult time maintaining employment.  Mr. Lafosse also

7

testified that he could have problems maintaining employment if he had episodes of pain from gout or hip problems which interfered with work four or five times a month.

**(12) The ALJ's Findings**.  Claimant argues that: (1) the Commissioner did not apply the proper legal standard in determining claimant's onset date of disability, and (2) the Commissioner failed to assign appropriate weight to the testimony of his treating physicians regarding his physical restrictions and/or disability prior to July 6, 2009.  Because I find that the ALJ failed to properly determine claimant's onset date of disability, I recommend that this matter be **REVERSED** and that the claimant be awarded benefits as of his onset date, December 31, 2005.

The ALJ determined that claimant had been disabled beginning on July 6, 2009, but not before.  (Tr. 25).  Social Security Regulation 83-20 establishes the policy and relevant evidence to be considered by the decisionmaker when establishing the onset date of disability.  Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence.  *Id*.  These factors are often evaluated together to arrive at the onset date.  *Id*.

Here, claimant alleged an onset date of December 31, 2005.  He testified that he had tried to do welding and fitting again after December, 2005, but could not do it.  (Tr. 35).  Dr. Boudreaux determined that claimant had "been unable to engage in any substantial or gainful employment since December 31, 2005 as a result of the disability associated with the developing hip condition which ultimately will result in a double hip replacement."  (Tr. 299).  While the ALJ gave "significant weight" to Dr. Boudreaux's opinion for the period beginning July 9, 2009, he found that claimant's own activities prior to that date "undermined the disability reported by Dr. Boudreaux."  (Tr. 23).

SSR 83-20 states that medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability.  With regard to slowly progressive impairments, such as claimant's degenerative hip arthritis, the regulation further provides that:

> [I]t is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In

such cases, consideration of vocational factors can contribute to the determination of when the disability began.

*Id*.

The records reflect that claimant started complaining of hip pain prior to December 31, 2005.  On June 29, 2005, claimant presented to UMC with complaints of problems with the top of his right leg of the hip.  (Tr. 178).  X-rays showed osteoarthritis of the right hip joint with avascular necrosis of the femoral head.  (Tr. 181).

On January 17, 2006, claimant complained of complained of right-sided hip pain for one year.  (Tr. 185).  He reported on March 6, 2006, that the pain had become progressively worse.  (Tr. 184).  X-rays of the right hip dated March 6, 2006, showed *significant osteoarthritic changes* in the right hip with joint space narrowing, subcondral sclerosis and marginal spur formations.  (emphasis added). (Tr. 183).  Mild osteoarthritic changes in the left hip were also noted.

On July 24, 2008, Dr. Stephen Boudreaux noted that claimant had had right hip pain for *four years*, for which he needed a hip replacement.  (emphasis added). (Tr. 190).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded

great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)).  Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ determined that the statements of Dr. Boudreaux and Dr. Nawas that claimant was unable to work as of December 31, 2005, were conclusory and given "no weight" in the determination of his ability to work.  (Tr. 21).  However, the record reflects that claimant had been complaining of hip pain prior to that date, and diagnostic testing revealed *significant osteoarthritic changes* in the right hip just three months after the alleged onset date.  (emphasis

added).  (Tr. 183).

As stated in SSR 83-20, in the case of slowly progressive impairments, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."  Here, the fact that claimant had complained to physicians of hip pain for several months prior to his alleged onset date and was diagnosed with significant hip arthritis a mere three months after that onset date infers that this condition existed prior to December 31, 2005.  Accordingly, the undersigned finds that the ALJ's finding that claimant's disability did not exist prior to July 6, 2009, constitutes error.

Accordingly, the undersigned recommends that the Commissioner's decision be **REVERSED**, and that the claimant be awarded appropriate benefits as of the onset date, December 31, 2005.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

July 12, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

13